## CONNER *et al.* v. APPLE & FRANKLIN.

No. 3718.    Opinion Filed June 9, 1914.

(141 Pac. 424.)

**ATTORNEY AND CLIENT**—Action for Services—Question for Jury—**Directing Verdict.** The evidence raises questions of fact that ought to have been submitted to the jury; and therefore, when the court instructed the jury to find for plaintiff, it committed reversible error.

(Syllabus by Brewer, C.)

*Error from County Court, Jefferson County;*
*B. T. Price, Judge.*

Action by Apple & Franklin against W. E. Conner and P. T. Hamilton. Judgment for plaintiffs, and defendants bring error. Reversed and remanded.

*Bridges & Vertrees,* for plaintiffs in error.

*Apple & Franklin,* for defendants in error.

Opinion by BREWER, C. Apple & Franklin, a firm of attorneys, filed this suit to recover a fee of $500 based upon a written contract to pay said sum, upon the condition that said firm obtain from the Secretary of the Interior a reversal of an order of the Indian agent, refusing to accept a certain bid on a certain tract of allotted land, sold at a public sale theretofore under the direction of the Indian agent. The defendants filed answer admitting the execution of the contract, and alleging a failure of consideration, and that the contract under which they agreed to pay the fee had been procured through fraudulent misrepresentations. At a trial of the cause, at the close of all the evidence, the court instructed the jury to return a verdict for the plaintiffs, Apple & Franklin, in the full sum named in the contract, together with interest, which was accordingly done, and to which the defendants excepted.

The main point urged here for a reversal is predicated upon this action of the court; it being contended that, under the state

of the evidence at the close of the trial, the court should have submitted the question of a right to recover to the jury.

Briefly summarized, the contract grew out of the following circumstances: In the fall of 1908 the United States Indian agent advertised three tracts of restricted land for sale in the town of Chickasha. Defendant Hamilton, who is a lawyer residing in Jefferson county, had a client who entered a bid for one of the tracts of land. Apple & Franklin had a client named Smith, who entered a bid for another tract of the land. A man named Bruner bid on a third tract of the land. When the bids were opened, all three of these bidders were found to be the highest bidders for the various tracts of land. After the bids had been opened and made public, another person wired offering more money for the various tracts than the successful bidders had offered. This caused the Indian agent to reject all of these bids and order a readvertisement of the lands. Mr. Apple learned of this and telephoned Mr. Hamilton of the matter, and by appointment the two met at Muskogee to insist upon the Indian agent that their clients were entitled to the land and that it should be awarded them under their bids. This he refused to do, and Mr. Apple told Hamilton that he was going to appeal to the Secretary of the Interior for his client, stating that his partner, Franklin, who had a great deal of business in Washington, would go up and represent the matter to the Secretary, and suggesting that Hamilton's client, Bruner, assist in bearing the expenses of the trip, and that the three cases, being based on identical facts, would be presented and an effort made to have the Secretary of the Interior reverse the ruling of the Indian agent, and require him to award the bids to their clients. After considerable parleying and discussion, Mr. Hamilton agreed that he would bear a portion of the expenses, and to that end gave Apple and Franklin $75 to be thus used. Mr. Franklin went to Washington and presented the matter to the department for the three bidders, having at the time a large amount of other business and cases before the department. This was in the fall or winter of 1908. Nothing had ever been said between the parties relative to paying Apple & Franklin a fee concerning the Bruner

matter other than the $75 heretofore mentioned. On January 13, 1909, an opinion was rendered in the three cases, grouped together, reversing the Indian agent and directing that the successful bidders be awarded the lands they had bid on.

On January 18, 1909, Mr. Apple appeared in Ryan and asked Mr. Hamilton if he had heard anything from the department relative to the Bruner bid. Being told that he had not had any information, the contract in suit was then entered into between the parties. This contract is dated January 18, 1909, and after reciting the advertised sale, that Bruner was the highest bidder of a certain tract of land, that Bruner had assigned his interest in the bid to defendants, that the bid had been rejected, that Apple & Franklin had appealed the matter, and were still endeavoring to have the Bruner bid accepted, then provided:

"Therefore, for such services by said parties of the second part, the party of the first part acknowledges their indebtedness and do hereby promise and agree to pay said Apple & Franklin as a fee for their services, only in case said bid is accepted and said lands are awarded in the name of the said H. S. Bruner, or his assignee, the sum of five hundred dollars, with the option of paying said fee by deed to any lots or parcels of said lands at their advertised or listed value; when listed for sale such lots or parcels to be selected by parties of the second part."

Of course it has been observed that when this contract was entered into, to be conditioned upon plaintiffs' success in having the Bruner bid accepted, it had already been accepted five days before. Defendants' claim, when reduced to plain language, is that these attorneys, having this information, and finding out that defendants were in the dark, trapped them into agreeing to pay for something they were under no previous obligation for, and for which they would not have agreed to pay, but for certain statements made to them relative to the matter. And defendants claim that because of these statements, which they allege to have been false, they were led to enter into the contract, thus assuming an obligation which they otherwise did not have.

Now, with this statement of the situation in mind, we will examine the evidence briefly to see if it raises a question that ought to have been left to the jury.

Mr. Hamilton in his testimony says:

"I was here at the time Mr. Apple came to see me and asked if I heard anything about it, and I hadn't, and he said, 'We were going to have to employ a lawyer at Washington to render some services in order to get this through,' and said it's going to cost quite a bit, and said he thought I and Mr. Conner ought to be willing to pay part of the services in getting this done. I said I didn't know about that, as I had paid all the expenses I agreed to, and didn't think I was supposed to pay any more. We went on and talked about what was going to have to be done to get it approved, and they were going to pay out as much as $1,500 to get it done, or they couldn't get the bid approved, and they wanted me to enter into a contract to pay them a sum of $500 and pay it in lots, provided they were successful in getting the bid approved, and that we got the land. I told him I wanted to go and see Mr. Conner about it, and he made the same statement that he made to me, that this appeal was pending, and so on, and by doing that the approval could be had, and we had to make a contract for $500 in the event they procured their services and they were successful, and I told him and agreed that if it had to be done we would do that, and we entered into the contract. The contract was signed on the 18th, and the next day, within three days after Mr. Apple was here and told me and Mr. Conner that it had to be done, I had a telegram from the agent that the bid was approved, and I think, at the time Mr. Apple was here trying to induce us to sign the contract, it was already approved."

Mr. Conner's testimony, though not so full, supports that of Mr. Hamilton.

There is no direct proof that plaintiffs, at the time of the contract, had any official notice of the department's action, but, taking the testimony of both plaintiffs and reading it carefully, it is inferable that they did have unofficial notice of the result of the case. While both the plaintiffs deny having had official notice, a person familiar with testimony, especially that of highly intelligent persons, finds their statements not quite as clear and certain as might have been expected. In his testimony Mr. Apple, after admitting they had a firm of lawyers in Washington looking after their matters, was asked:

"Q. They never kept you posted? A. Yes, sir; they did. Q. Then you had no information that this approval had been

made when defendant's contract had been made? A. No, sir; we had information, as I stated, that certain subordinates had passed upon it, but the Secretary had not yet approved it."

Mr. Franklin was interrogated relative to this matter of notice from his lawyers in Washington:

"Q. They never notified you? A. By letter, they did. Q. But it was received after date of contract? A. Yes, sir; notice from the Indian agent."

In other parts of their testimony, relative to the matter of their knowledge of the departmental action at the time of the contract, the answers are sometimes not exactly responsive to the question, and have been framed in such a way as to leave the impression that their denial of notice is confined to "official notice of the department." From all of which we are led to believe that the court erred, under this state of the evidence, in instructing a verdict for the plaintiffs. We believe there is some evidence, though it may be slight, which aided by the inferences and deductions that may be legitimately drawn from it, tends to support defendants' challenge against the contract.

Defendants' evidence tended to show that, up to the time of the contract, no liability had been incurred by them. Under plaintiffs' evidence, however, they would probably have been liable for a fee based upon reasonable value of services. But, supposing defendants' view as to previous liability should be accepted, then if plaintiffs knew they had already succeeded in the case, and no further efforts were required, there being no former obligation for services, then this contract would have no consideration to support it. The jury might have taken this view of the evidence. It ought to have been left to them.

The cause should be reversed and remanded for a new trial.

By the Court: It is so ordered.